UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOYCE M. BURRUS,<br><br>                    Plaintiff,<br><br>    v.<br><br>U.S. DEPARTMENT OF AGRICULTURE (USDA) FOREST SERVICE, *et al.*,<br><br>                    Defendants. | Case No.  2:20-cv-00845-KJM-JDP (PS)<br><br>FINDINGS AND RECOMMENDATIONS THAT DEFENDANT FOREST SERVICE'S MOTION TO DISMISS BE GRANTED<br><br>ECF No. 28<br><br>OBJECTIONS DUE WITHIN 14 DAYS |

Plaintiff Joyce M. Burrus brought this action against her former employer, the U.S. Forest Service ("Forest Service"), and various individual defendants, in connection with disputes relating to her health benefits and to three debts assessed by the Forest Service for salary overpayments and unpaid healthcare premiums. Plaintiff seeks relief under the Freedom of Information Act, the Privacy Act, the Declaratory Judgments Act, the Family and Medical Leave Act, and various federal regulations. No individual defendants have appeared. Defendant Forest Service now moves to dismiss for lack of subject matter jurisdiction and for failure to state a claim. I recommend that the court dismiss the case in its entirety because the court lacks jurisdiction over her claims relating to decisions over her benefits and pay, she failed to exhaust her administrative remedies before filing her claims for access to records, and the remaining

1

1  claims fail to state a claim.

## Background

Plaintiff is a former federal employee with over thirty years of employment at the Forest Service, a component of the United States Department of Agriculture ("USDA"). ECF No. 1 at 4. Beginning in 2012, she took a series of extended leaves of absence under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601-2654, and under the Forest Service's Voluntary Leave Transfer Program ("VLTP"), to care for her husband, who was undergoing treatment for cancer. *Id*. at 4-6. The VLTP permits the transfer of "unused accrued annual leave of one agency officer or employee . . . for use by another agency officer or employee who needs such leave because of a medical emergency." 5 C.F.R. § 630.901. When an employee exhausts all leave options and enters unpaid leave status, he or she may choose to continue certain benefits; to do this, the employee must either pay his or her premiums or incur a debt to the agency. *Id.* at § 890.502(b).

In June 2016, plaintiff used the last of her leave donations under the VLTP and entered leave without pay status. ECF No. 1-2 at 1; ECF No. 1-4 at 45. Shortly thereafter, she elected to continue her Federal Employee Health Benefits ("FEHB") coverage without paying premiums; as a result, between June 2016 and March 2018, she incurred a debt of $18,377. *See* ECF No. 1-2 at 4; ECF No. 1-4 at 45. She disputes this debt, claiming that because defendants terminated her healthcare benefits without adequate notice in May 2017, she was improperly charged for at least a portion of the premiums.[1] ECF No. 1 at 17.

Plaintiff also challenges two debts for overpayment of salary in the amounts of $5,672 and $1,791. ECF No. 1 at 4. A letter from a Forest Service representative indicates that plaintiff received new leave donations at the end of 2016; when pay staff "rushed to process the corrected timesheets" to reflect the additional leave, plaintiff "was paid twice for four pay periods in 2016," causing her to incur the first overpayment debt of $5,672. ECF No. 1-4 at 45. Plaintiff does not

---

[1] In addition to defendant Forest Service, the movant here, plaintiff names in her complaint six individual defendants, all apparently Forest Service employees, and "Does 1-100." In its briefing, the U.S. Department of Justice occasionally argues on behalf of "defendants," see ECF No. 28-1 at 10, and it seeks dismissal of the entirety of plaintiff's suit, including the portion directed at individual defendants—though none of the individual defendants have appeared.

appear to dispute the accuracy of the overpayment amount, but she objects to the lack of a hearing and complains that defendants failed to provide her with information and records justifying their recoupment of the overpayment. ECF No. 1 at 7 & 20-21. Plaintiff learned of the second salary-overpayment debt, for $1,791, in February 2019, when defendant Lawson informed her that the Forest Service had erroneously paid her during the 2018-19 government shutdown. *Id*. at 11 & 23. She alleges that she "did not receive [the] alleged salary overpayment" because it was issued to a bank account that had been closed. *Id*. at 23.

Plaintiff brings six claims under: the Privacy Act, 5 U.S.C. § 552a; the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"); the Federal Declaratory Judgment Act, 28 U.S.C. § 2201; the Family and Medical Leave Act, 29 U.S.C. §§ 2601-2654; and several federal regulations. She challenges three debts and the termination of her healthcare benefits, and she makes claims relating to the provision and accuracy of certain information.[2]

Throughout the complaint, plaintiff broadly alleges that defendants violated her rights under FOIA and the Privacy Act, for example by failing "to provide [her] with the information the Agency relied upon to cancel her health benefits and that support the Agency's assertions of alleged debts to the government." *Id.* at 29. In addition to seeking records and other information, she asks that the court: expunge or amend any "inaccurate and/or derogatory" records, award her damages, and cancel any erroneous debts to the Forest Service. *Id.* at 31. She identifies an October 2018 letter to the USDA Forest Service Director, Ted Gutman, as a request for information and assistance, and in her opposition she argues that a portion of this letter constitutes

---

[2] Specifically, her first and second claims challenge (1) the cancellation of her healthcare benefits in 2017 and (2) the related $18,377 debt for unpaid premiums; she seeks damages, recission of the debt, and amendment of any record of the debt under the Privacy Act. *Id.* at 14-17. Her second claim also alleges that defendants violated either the Privacy Act or FOIA by "failing to provide accurate and reliable information to support the charges." *Id.* at 17. Her third claim alleges violations of the Privacy Act and of various regulations and procedures as a result of defendants' "fail[ure] to provide [her] with accurate and reliable information pertaining to an alleged salary overpayment in the amount of $5,672." *Id.* at 22. In her fourth claim, she alleges that defendants "failed to take corrective action(s) pertaining to [her] alleged salary overpayment in the amount of $1,791." *Id.* at 23. And her fifth and sixth claims respectively allege negligence and retaliation pertaining to her cumulative adverse employment actions and eventual termination in July 2018, though she does not appear to allege a statutory vehicle for these claims other than the Privacy Act. *Id.* at 24-28.

a proper request for records under FOIA. ECF No. 1 at 10; ECF No. 1-3 at 65.[3] The letter states in its first paragraph that "[t]his is a formal request for assistance in the reinstatement of my health benefits and verification of the validity of debts owed to the government (salary overpayment in the amount of $5,672.55 and $19,000 [in] health benefits)." ECF No. 1-3 at 62. The portion requesting access to documents, which appears on page four of six, reads:

> Provided below is a request for information; I am requesting that the Agency provide an explanation as to the authorities that permitted the action/inactions taken against me while I was an approved participant in the Voluntary Leave Transfer Program. Additionally, please provide the Agency's supporting documentation (to include but not limited to reports such as Time and Attendance (T&A) reports, NFC generated reports, etc., and/or directives) that was relied upon to support the adverse actions taken against me and what corrective action(s), if applicable, the Agency plans to take.

*Id.* at 65.

Defendant Forest Service moves to dismiss for lack of subject matter jurisdiction and for failure to state a claim. ECF No. 28. The Forest Service argues that the court lacks subject matter jurisdiction over any claims challenging the fact or amount of any debts related to plaintiff's pay or benefits because they are preempted by the Civil Service Reform Act ("CSRA"). ECF No. 28-1 at 8. Separately, the Forest Service argues that because plaintiff "requested correction not of an error of fact, but of an error of judgment[,]" she has failed to state a claim under the record-amendment provisions of the Privacy Act. *Id.* at 6 (quoting *Blevins v. Plummer*, 613 F.2d 767 (9th Cir. 1980)). The Forest Service further argues that because the it has cancelled the $1,791 debt for salary overpayment and a portion of the $18,377 healthcare premium debt, claims arising from those debts should be dismissed as moot under Rule 12(b)(1). *Id.* at 9. In support of this mootness argument, the Forest Service introduces a declaration from Jennifer Thomas, "Branch Supervisor, Human Resources, Pay and Leave," attesting to the current

---

[3] Plaintiff also sent her letter to the following individuals: Randy Moore, Regional Forester, USDA Forest Service, Pacific Southwest Region; Gene Blankenbaker, Deputy Director, ASC-HRM; Dwayne Brown, Supervisory HR Specialist (Pay); Patrick Petracca, Program Manager (Benefits). ECF No. 1-3 at 62.

4

status of each debt. ECF No. 28-3 at 2. Finally, the Forest Service argues that plaintiff's October 2018 letter was not a proper FOIA or Privacy Act request, and that plaintiff therefore failed to exhaust her administrative remedies. ECF No. 28-1 at 5-7.

**Legal Standards**

**A.    Rule 12(b)(6) Standards**

A complaint may be dismissed for "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss for failure to state a claim, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). The plausibility standard is not akin to a "probability requirement," but it requires more than a sheer possibility that a defendant has acted unlawfully. *Iqbal*, 556 U.S. at 678.

For purposes of dismissal under Rule 12(b)(6), the court generally considers only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice, and construes all well-pleaded material factual allegations in the light most favorable to the nonmoving party. *Chubb Custom Ins. Co. v. Space Sys./Loral, Inc.*, 710 F.3d 946, 956 (9th Cir. 2013); *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012). Dismissal under Rule 12(b)(6) can be based on either: (1) lack of a cognizable legal theory, or (2) insufficient facts under a cognizable legal theory. *Chubb Custom Ins. Co.*, 710 F.3d at 956. Dismissal also is appropriate if the complaint alleges a fact that necessarily defeats the claim. *Franklin v. Murphy*, 745 F.2d 1221, 1228-29 (9th Cir. 1984).

**B.    Rule 12(b)(1) Standards**

A jurisdictional challenge under Rule 12(b)(1) of the Federal Rules of Civil Procedure can be facial or factual. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In a facial challenge, the moving party asserts that the allegations in the complaint are "insufficient on their face" to establish federal jurisdiction. *Id.* "Whether subject matter jurisdiction exists

therefore does not depend on resolution of a factual dispute, but rather on the allegations in [the] complaint." *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). The court must presume the truth of plaintiff's factual allegations "and draw all reasonable inferences in his favor." *Doe v. Holy*, 557 F.3d 1066, 1073 (9th Cir. 2009). Nevertheless, plaintiff bears the burden of establishing subject matter jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

In a factual challenge, the moving party "disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air*, 373 F.3d at 1039. The court does not simply accept the allegations in the complaint as true. *Id*. Instead, "when challenged on allegations of jurisdictional facts, the parties must support their allegations by competent proof," *Hertz Corp. v. Friend*, 559 U.S. 77, 96-97 (2010), and the court makes findings of fact, resolving any material factual disputes by independently evaluating the evidence, *Friends of the Earth v. Sanderson Farms, Inc.*, 992 F.3d 939, 944-45 (9th Cir. 2021).

"A document filed pro se is to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

**Discussion**

**A.    Civil Service Reform Act**

The court must consider whether the CSRA preempts certain of plaintiff's claims. "Congress enacted the CSRA in 1978 to replace the old civil service system, an 'outdated patchwork of statutes and rules built up over almost a century . . .[,] with an integrated scheme of administrative and judicial review, designed to balance the legitimate interests of the various categories of federal employees with the needs of sound and efficient administration.'" *Mangano v. United States*, 529 F.3d 1243, 1245 (9th Cir. 2008) (quoting *United States v. Fausto*, 484 U.S. 439, 444 (1988)). The resulting "remedial scheme is both exclusive and preemptive," *id*. at 1246, providing for the sole remedy for any issue that "falls within the scope of the CSRA's 'prohibited personnel practices,'" *Orsay v. U.S. Dep't of Justice*, 289 F.3d 1125, 1128 (9th Cir. 2002) (quoting 5 U.S.C. § 2302), "even if no remedy [is] available . . . under the CSRA," *Collins v.*

6

*Bender*, 195 F.3d 1076, 1079 (9th Cir. 1999). The statute defines prohibited personnel practices as "any 'personnel action' taken by someone in authority that violates one of twelve enumerated practices." *Mangano v. United States*, 529 F.3d 1243, 1247 (9th Cir. 2008) (quoting 5 U.S.C. § 2302(b)). "The definition of 'personnel action' is, necessarily, broad," *id.* at 1247, including appointments, promotions, transfers, changes in duties or working conditions, and "decision[s] concerning pay, benefits, or awards," 5 U.S.C. §§ 2302(a)(2)(A)(i)-(xi).

Plaintiff's allegations challenging defendants' benefits, leave, and overpayment decisions are brought primarily under 5 U.S.C. § 552a(g)(1)(C). *See* ECF No. 1 at 3, 14, 17, 21, & 24. That section of the Privacy Act provides a civil remedy "[w]henever an agency . . . fails to maintain any record concerning any individual with such accuracy, relevance, timeliness, and completeness as is necessary to assure fairness in any determination relating to the qualifications, character, rights, or opportunities of, or benefits to the individual that may be made on the basis of such record, and consequently a determination is made which is adverse to the individual." 5 U.S.C. § 552a(g)(1)(C). Subsection (g)(2)(A) permits the court to "order the agency to amend the individual's record," and subsection (g)(4) provides for damages in a suit brought under (g)(1)(C) if the court finds that the agency acted intentionally or willfully.

But when a matter is committed to the CSRA's scheme of administrative remedies, the Privacy Act cannot be used as a "backdoor to judicial review." *Houlihan v. Off. of Pers. Mgmt*, 909 F.2d 383, 385 (9th Cir. 1990) (internal citations omitted). In *Houlihan*, the Ninth Circuit explained that "in order to consider [the plaintiff's] Privacy Act claim, we would have to decide not only whether [the agency] violated the Act, but whether [the agency's] alleged [failure to properly maintain its records] caused it to make 'a determination . . . which is adverse to [her].'" *Id*. (quoting § 552a(g)(1)(C)). Entertaining jurisdiction over such a suit would "frustrat[e] Congress's decision to assign to the [MSPB] the task of policing alleged prohibited personnel practices." *Id.* Therefore, if plaintiff's claims under § 552a(g)(1)(C) challenge a matter "within the scope of the 'CSRA's prohibited personnel practices,'" *Orsay*, 289 F.3d at 1128 (quoting 5

1   U.S.C. § 2302(b)), this court lacks jurisdiction to hear them.[4]

2         Plaintiff's first four claims challenge defendants' decisions to terminate her healthcare benefits, to charge her for $18,377 in unpaid healthcare premiums, and to seek repayment of two purported salary-overpayment debts. ECF No. 1 at 14, 17, 20, & 23.[5] Her fifth claim alleges that defendants were broadly negligent, subjecting her to unfair treatment in various matters relating, *inter alia*, to her leave status and benefits. *See id*. at 23-28. And her sixth claim alleges that defendants "subjected [her] to retaliation[] after she raised concerns and complained about her adverse employment issues," especially insofar as defendant Vega "returned donated leave" even though—according to plaintiff—she was eligible to receive further VLTP donations. *Id.* at 29. Such "[d]ecision[s] concerning pay, benefits, or awards" are among the "personnel actions" governed by the CSRA. 5 U.S.C. § 2302(a)(2)(A)(ix); *see Russell*, 191 F.3d at 1017-21 (holding that the CSRA precludes APA review of a federal employee's FMLA claim for denial of "retroactive leave for her absences . . . [and] placement upon a reduced work schedule or intermittent leave"); *Baker v. Napolitano*, No. CA 09-0036-CG-C, 2009 WL 1658953, at *11 (S.D. Ala. June 11, 2009) (holding that the MSPB had exclusive jurisdiction over a former federal employee's challenge to "[the Office of Personnel Management's ('OPM')] calculations regarding the overpayment the [plaintiff] received").

      Plaintiff challenges these actions as "prohibited personnel practices" as defined in 5

---

[4] The Privacy Act does not contain a vehicle for alleging common-law torts such as plaintiff appears to allege in claims five and six. *See* ECF No. 1 at 23 & 28. However, the CSRA bars claims brought under the Federal Tort Claims Act ("FTCA") and under most other vehicles for claims against the United States. *See Mangano*, 529 F.3d at 1248 (holding that a federal employee's FTCA claim arising out of his termination was "subject to CSRA preemption"); *Karamanos v. Egger*, 882 F.2d 447, 451 (9th Cir. 1989) (holding mandamus review for alleged CSRA violations barred); *Fausto*, 484 U.S. 439 (holding that CSRA preempts Tucker Act claims for violations of pay-administration statutes in Chapter 55 of Title 5); *Russell v. U.S. Dep't of the Army*, 191 F.3d 1016, 1019 (9th Cir. 1999) (holding that the CSRA preempts a federal employee's challenge under Title II of the FMLA to her denial of paid leave).

[5] Although her third claim could be read as challenging only the "fail[ure] to provide [her] with accurate and reliable information pertaining to an alleged salary overpayment in the amount of $5,672," ECF No. 1 at 20, she later demands the full cancellation of the debt. Therefore, this claim is included here to the extent that it challenges the assessment and collection of the debt; her record-request claim is addressed below.

U.S.C. § 2302(b). In her first claim, she alleges that defendants violated § 2302(b)(9)(A) and § 2301(b)(12)(A), the subsections respectively barring actions taken in retaliation for "the exercise of any appeal, complaint or grievance" and actions taken for any reason that violate any of the "merit system principles" listed in § 2301. *See* ECF No. 1 at 14. Although she does not cite § 2302(b)(9) under her sixth claim, for retaliation, *see id*. at 28, retaliation is an enumerated prohibited personnel practice. And in all claims except her third, she lists "Prohibited Personnel Practices" as among the "Law(s) Violated." *See* ECF No. 1 at 14, 17, 22, & 28. With respect to her fifth claim, which appears to be a negligence claim—although negligence is not listed as a prohibited personnel practice, "the CSRA preempts [tort] claims arising directly out of a federal employment relationship even where the plaintiff has no remedy under the CSRA." *Hamann v. U.S. Dep't of Interior*, No. 21-CV-02383-DDD-NRN, 2022 WL 1605297, at *3 (D. Colo. May 20, 2022) (dismissing a negligence claim under the FTCA for "failing to compensate as required") (citing *Mangano*, 529 F.3d at 1246). Accordingly, since these claims challenge actions within the scope of the CSRA's prohibited personnel practices, they should be dismissed for lack of jurisdiction.

      **B.**    **Access to Records**

Plaintiff alleges that defendants violated her rights under the Privacy Act and FOIA by failing to provide records in response to her October 2018 letter requesting an explanation of its benefits and overpayment determinations.[6] *See* ECF No. 1 at 10, 16, & 31; ECF No. 1-3 at 65-66; ECF No. 29 at 11. Defendant Forest Service argues that plaintiff never filed a proper request in compliance with the agency's FOIA or Privacy Act regulations and that her claims should therefore be denied for failure to exhaust administrative remedies. ECF No. 28-1 at 5-7. Although plaintiff's October 2018 letter did not identify itself as a request under either statute, ECF No. 1-3 at 65, plaintiff takes the position that she exhausted her remedies under both

---

[6] These claims are not barred by the CSRA. *See Rosen v. Walters*, 719 F.2d at 1425 ("An individual may still seek the aid of the court to obtain access to his [agency] records, 5 U.S.C. § 552a(d)(1) and (g)(1)(A) . . .[;] all our decision prohibits is an action for damages under § 552a(g)(1)(C) and (g)(4) when review of [agency] decisions on granting or denying []benefits is required.").

statutes, ECF No. 29 at 1. In light of the considerable overlap between the two statutes, I will address her claims together.

"The Privacy Act governs the disclosure of, access to, and amendment of records on individuals that are maintained by federal agencies." *Lane v. Dep't of Interior*, 523 F.3d 1128, 1138 (9th Cir. 2008). "An individual may 'gain access to his [or her] record' upon request," *id.* (quoting 5 U.S.C. § 552a(d)(1)), "and a cause of action arises if an agency refuses to comply with a request," *id*. at 1139 (citing § 552a(g)(1)(B)). Similarly, FOIA provides for a civil action, *see* 5 U.S.C. § 552(a)(4)(B), when "an agency has (1) improperly; (2) withheld; (3) agency records," *Luis v. U.S. Dep't of the Interior*, No. 1:15-CV-01412-LJO-EPG, 2016 WL 80631, at *2 (E.D. Cal. Jan. 7, 2016) (quoting *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 150 (1980)) (internal marks omitted). In cases where an individual requests their own personnel records, the two statutes provide substantially similar remedies. *See Polk v. Fed. Bureau of Investigation*, No. 14-cv-4667-PJH, 2016 WL 80564, at *1 (N.D. Cal. Jan. 7, 2016) (explaining that "there is considerable interplay between the two statutes vis-à-vis regulations concerning individuals and public access to such information"). However, requests made by an individual for access to their own records are typically brought under the Privacy Act. *See, e.g.*, 5 C.F.R. § 294.103 ("OPM will use its Privacy Act regulations . . . when individuals ask for records about themselves that may be filed in OPM systems of records.").

Both acts provide for the exhaustion of administrative remedies before filing suit. *See In re Steele*, 799 F.2d 461, 465-66 (9th Cir. 1986) (holding that suits under FOIA require exhaustion of administrative remedies); *Sterrett v. Dep't of Navy*, No. 09-CV-2083-IEG (POR), 2010 WL 330086, at *4 (S.D. Cal. Jan. 20, 2010) ("[T]here is no doubt the exhaustion of administrative remedies is a prerequisite before a federal court can review a Privacy Act claim seeking access to documents."). Exhaustion is a jurisdictional requirement for Privacy Act suits, *see Barouch v. U.S. Dep't of Just.*, 962 F. Supp. 2d 30, 67 (D.D.C. 2013) ("[F]ailure to exhaust administrative remedies under the Privacy Act is a jurisdictional deficiency because exhaustion is required by statute."); *Tangirala v. Potter*, No. CIV-S-06-0384 FCD GGH PS, 2008 WL 2633239, at *19 (E.D. Cal. June 25, 2008) (recommending dismissal of Privacy Act suit for failure to exhaust

10

1    under Rule 12(b)(1), for lack of jurisdiction), whereas "[e]xhaustion under FOIA is a prudential

2    rather than jurisdictional consideration," *Aguirre v. U.S. Nuclear Regul. Comm'n*, 11 F.4th 719,

3    725 (9th Cir. 2021) (citing *Yagman v. Pompeo*, 868 F.3d 1075, 1083-84 (9th Cir. 2017)).

4    Relatedly, unlike under the Privacy Act, the FOIA exhaustion requirement can be waived

5    pursuant to a "constructive-exhaustion provision, under which requestors are deemed to have

6    exhausted their remedies when an agency misses a statutory deadline." *Id.* (citing 5 U.S.C.

7    § 552(a)(6)(C)(i)); *cf. Barouch*, 962 F. Supp. 2d at 67 ("[B]ecause exhaustion under the Privacy

8    Act is jurisdictional, the Court cannot find that plaintiff constructively exhausted his

9    administrative remedies.").

10   As an initial matter, the USDA's Privacy Act regulations provide that "[a]ny individual

11   whose request . . . is denied may appeal that denial to the head of the agency which maintains the

12   system of records to which the request relates," 7 C.F.R. § 1.112(b), and "bring[ing] a civil action

13   in federal district court to seek review of the denial" is authorized "*[i]n the event that an

14   appeal . . . is denied*," *id.* § 1.112(c) (emphasis added).  Plaintiff does not claim that she appealed

15   any denial of her Privacy-Act claim, instead arguing only that the agency's failure to respond

16   constitutes constructive exhaustion of her remedies under FOIA.  *See* ECF No. 29 at 10.  Since

17   there is no constructive-exhaustion provision under the Privacy Act, her claims must be dismissed

18   for lack of jurisdiction.  *See Barouch*, 962 F. Supp. 2d at 67.

19   Defendant argues that plaintiff's FOIA claim should similarly be dismissed because her

20   October 2018 letter did not include a proper FOIA request, and therefore FOIA's constructive-

21   exhaustion provision does not apply.  *See* ECF No. 32 at 2.  Plaintiff argues that her request

22   constituted a proper FOIA request despite her failure to identify it as such because "a person need

23   not title a request for government records a FOIA request."  ECF No. 29 at 11 (quoting *Newman*

24   *v. Legal Services Corp.*, 628 F. Supp. 535, 543, 121 L.R.R.M. (BNA) 2962 (D.D.C. 1986))

25   (internal quotation marks omitted).  Defendant responds that her characterization of the letter is

26   "nothing more than a post-hoc attempt to paint prior correspondence as a FOIA request," noting

27   that the letter "does not request government records, but repeatedly states that she seeks

28   'reinstatement of [her] health benefits.'"  *Id.* (quoting ECF No. 1-3 at 62, 67).

To demonstrate exhaustion of remedies under FOIA, the plaintiff must show that she "request[ed] specific information *in accordance with published administrative procedures*." *In re Steele*, 799 F.2d at 466 (emphasis added) (citing 5 U.S.C. § 552(a)(1), (2), & (3)). "Where no attempt to comply fully with agency procedures has been made," the complaint should be dismissed for failure to exhaust. *Id.*; *see also Stein v. Cent. Intel. Agency*, 454 F. Supp. 3d 1, 22 (D.D.C. 2020) ("'An agency's obligation under the FOIA does not arise . . . until a proper request is received.'") (quoting *Thomas v. Fed. Commc'ns Comm'n*, 534 F. Supp. 2d 144, 145 (D.D.C. 2008)). The USDA's FOIA regulations permit an individual to submit FOIA requests (1) "in writing . . . to the designated component listed on the USDA's website that maintains the records requested," (2) "electronically via USDA's online web portal," (3) by email to "component FOIA offices as listed on the USDA public FOIA website," or (4) by "send[ing] a request to the Departmental FOIA Officer." 7 C.F.R. §§ 1.3(a)(1)-(3). The regulations further state that "[t]o facilitate the processing of a request, a requester should place the phrase "FOIA REQUEST" in capital letters on the front of their envelope, the cover sheet of their facsimile transmittal, or the subject line of their email." *Id.* § 1.3(a)(4).

Her request for information lacks indicators that it is a FOIA request. Her request appears in a single, two-sentence paragraph on the fourth page of a six-page letter, the remainder of which is devoted to explaining her dispute, outlining a variety of objections to her treatment, and demanding explanations. She makes no allegation that she identified her request as a "FOIA REQUEST" in any way; indeed, she does not appear to have identified her request as a FOIA or Privacy Act-based request at any point prior to filing suit. And nothing before the court suggests that any of the individuals to whom she sent her letter was a proper recipient of a FOIA request under 7 C.F.R. §§ 1.3(a)(1)-(3).

Since it is apparent that she made no "attempt to comply fully with agency procedures," it would be improper to construe her letter as a FOIA request that triggered the agency's obligations or FOIA's constructive-exhaustion provision. *See In re Steele*, 799 F.2d at 466 (explaining that the district court committed reversable error when it "construed [an] informal discovery letter and subsequent motion for discovery as a FOIA request"); *see also Stockton E. Water Dist. v. United*

12

*States*, No. 2:08-CV-0563-GEB-GGH, 2008 WL 5397499 at *2 (E.D. Cal. Dec. 19, 2008) (granting summary judgment to defendants in part because the purported FOIA request was made in a letter that referenced FOIA only once "in a context which did not clearly show the letter was meant to be a request under the FOIA"); *Stein*, 454 F. Supp. 3d at 22-23 (holding that the defendant agency's obligations under FOIA were not triggered by emails that "did not comply with the agency's regulations for submitting FOIA requests").

### C. Declaratory Judgment Act Claims

Plaintiff also invokes the Declaratory Judgment Act ("the Act"), 28 U.S.C. § 2201. *See* ECF No. 1 at 4. The Act provides that "in a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The Act "is not a grant of jurisdiction to the federal courts. It merely makes available an additional remedy in cases where a court already has subject matter jurisdiction." *Kidd v. United States*, 59 F.3d 175 (9th Cir. 1995) (citing *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671-72 (1950). Hence, in evaluating claims under the Act, "the district court must first inquire whether there is an actual case or controversy within its jurisdiction." *Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 669 (9th Cir. 2005). "[I]f there is a case or controversy within its jurisdiction, the court must decide whether to exercise . . . [its] discretionary [authority] . . . to entertain declaratory relief." *Am. States Ins. Co. v. Kearns*, 15 F.3d 142 (9th Cir. 1994).

Because I find that the CSRA deprives this court of jurisdiction over all but plaintiff's records-access claims, the Act's potential relevance is limited. And although I recommend dismissing plaintiff's FOIA claims for access to records for failure to state a claim rather than for lack of jurisdiction, the jurisprudential considerations underlying FOIA's exhaustion requirement apply with equal or greater force to application of the Act. *See Chamberlain v. Allstate Ins. Co.*, 931 F.2d 1361, 1367 (9th Cir. 1991) (explaining that the court "must balance concerns of judicial administration, comity, and fairness to the litigants"). Accordingly, her claims under the Declaratory Judgment Act should be dismissed.

**D.     Other Defendants**

Defendant Forest Service brought the instant motion on its own behalf; the remaining defendants have yet to appear. But the court must bear in mind that plaintiff is proceeding under the *in forma pauperis* statute, 28 U.S.C. § 1915, which provides that the court "shall dismiss a case if at any time if the court determines" that the action "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2); *see Lucero v. Pennella*, No. 1:18-CV-01448-LJO-SAB, 2018 WL 5793429 (E.D. Cal. Nov. 2, 2018). Because FOIA and the Privacy Act only authorize suits against an "agency," and the court lacks jurisdiction over plaintiff's claims brought under other statutes, plaintiff's allegations against the individual defendants should be dismissed under the *in forma pauperis* statute.[7] *See* 5 U.S.C. §§ 552(f), 552a(g)(1); *Schowengerdt v. Gen. Dynamics Corp.*, 823 F.2d 1328, 1340 (9th Cir. 1987) ("The agency is the only proper party to such a suit; the civil remedy provisions do not apply to individual defendants."); *Sherwood Van Lines, Inc. v. U.S. Dep't. of Navy*, 732 F. Supp. 240, 241 (D.D.C. 1990) ("FOIA authorizes suit against federal agencies and does not create a cause of action against individual employees of the federal agency.").

**E.     Conclusion**

I will recommend that defendant Forest Service's motion to dismiss be granted based on a combination of lack of jurisdiction and failure to state a claim, and that plaintiff's remaining claims against individual defendants who have yet to appear be dismissed under the *in forma pauperis* statute. Since an amended complaint could conceivably correct the shortcomings of the current one, I will recommend that the court grant plaintiff leave to amend. *See Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (en banc) (holding that district courts must afford pro se litigants an opportunity to amend if it appears possible that they can correct the deficiencies in their complaints).

Accordingly, it is hereby RECOMMENDED that defendant's motion to dismiss, ECF

---

[7] Although the parties appear to agree that the individual defendants are not proper defendants in this action, *see* ECF Nos. 14 & 30, those defendants have not yet been dismissed.

No. 28, be granted and the complaint, ECF No. 1, be dismissed with leave to amend.

I submit these findings and recommendations to the district judge under 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. The parties may, within 14 days of the service of the findings and recommendations, file written objections to the findings and recommendations with the court. Such objections should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge will review the findings and recommendations under 28 U.S.C. § 636(b)(1)(C).

IT IS SO ORDERED.

Dated: _September 9, 2022_

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE